UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ROCA CHRISTIAN COMMUNITIES INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHURCH MUTUAL INSURANCE CO.<br><br>Defendant. | Case No.: 20cv1324 DMS (BGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

This case comes before the Court on Defendant's motion to dismiss. Plaintiff filed an opposition to the motion, and Defendant filed a reply. For the reasons discussed below, the motion is denied.

**I.**

**BACKGROUND**

The present case arises out of a March 2018 commercial lease agreement ("Lease") between Plaintiff La Roca Christian Communities International, Inc. ("Plaintiff" or "La Roca") and Pacific Coast Christian Prep ("PCCP"). (Compl. ¶17.) La Roca is a nonprofit church and PCCP previously operated a primary school. (*Id.*) PCCP entered the Lease

1

for the purpose of opening and operating a primary school on La Roca's premises. (*Id.*) The Lease required a number of tenant improvements, some of which were paid for by La Roca and others by PCCP. (*Id.* ¶18.) Ultimately, not all of the improvements were completed prior to the start of the school year, and PCCP was unable to occupy the premises and use it as a school. (*Id.* ¶19.) As a result, PCCP was forced to move its school operation to an alternative site and suffered damages from loss of its tenant improvements and other personal property. (*Id.*)

In March 2019, PCCP filed a demand for arbitration against Plaintiff La Roca alleging claims for breach of contract and unjust enrichment. (*Id.* ¶¶20-21.) La Roca thereafter tendered PCCP's claim to Defendant Church Mutual Insurance Company for defense and indemnity coverage under a multi-peril insurance policy it had issued to La Roca, numbered 0263084-02-094345, effective March 21, 2018, to March 21, 2021 ("the Policy"). (*Id.* ¶¶6, 27.) Defendant denied La Roca's request for defense and indemnity coverage, but paid it $20,000 (less a $250 deductible) under the Policy's Legal Defense Coverage. (*Id.* ¶29.) La Roca asked Defendant to reconsider its denial, but Defendant failed to respond to Plaintiff's request. (*Id.* ¶¶32-39.) The arbitrator then issued an Interim Award, awarding PCCP monetary damages against La Roca in the amount of $177,793.07. (*Id.* ¶40.) After the Interim Award was issued, La Roca forwarded it to Defendant and again requested that Defendant reconsider its denial of the claim. (*Id.* ¶¶41-43.) Ultimately, Defendant reaffirmed its denial. (*Id.* ¶¶44-47.) The arbitrator then issued a Final Award in favor of PCCP and against La Roca in the amount of $337,930.04, which included the interim award plus attorneys' fees, costs and prejudgment interest. (*Id.* ¶48.) Both PCCP and La Roca filed petitions to vacate the arbitration award in state court, which petitions are pending. (*Id.* ¶49.)

On July 14, 2020, Plaintiff La Roca filed the present case against Defendant arising from its denial of La Roca's request for coverage under the Policy. La Roca alleges claims for declaratory relief (duty to defend), declaratory relief (duty to indemnify), breach of contract, specific performance and bad faith. In response to the Complaint, Defendant

filed the present motion to dismiss.

## II.

## DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint in its entirety. It argues Plaintiff is not entitled to coverage because there was no "property damage" based on an "occurrence" as those terms are defined in the Policy. In the absence of coverage, Defendant argues the bad faith claim must also be dismissed.

### A. Legal Standard

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

### B. Duty to Defend and Indemnify

Defendant's motion to dismiss depends on issues of contract interpretation. "'Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous.'" *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008) (quoting *Bedrosian v. Tenet Healthcare Corp.*, 208

3

F.3d 220 (9th Cir. 2000)). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)). "Language in a contract must be interpreted as a whole and in the circumstances of the case." *Id.* (citing *Bank of W. v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992)). "Where the language 'leaves doubt as to the parties' intent,' *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986), the motion to dismiss must be denied." *Id.*

In this case, the relevant policy provisions provide:

> We [Defendant] will pay those sums that the insured [La Roca] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Compl., Ex. A, ECF No. 1-2 at 121.) The Policy goes on to state: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'". (*Id.*) The Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 133.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

Here, Defendant argues that PCCP's "suit" for damages against La Roca was limited to "lost tuition and lost tenant improvements and equipment" (Mot. at 9.) Defendant

argues neither of these losses seeks covered "property damage" under the Policy, and that even if it did, neither was caused by an "occurrence" under the Policy. Plaintiff disputes that lost tuition and lost tenant improvements and personal property were the only damages sought by PCCP in the underlying case. It asserts PCCP also alleged loss of use of real property, namely "loss of use of the premises as a school[.]" (Opp'n at 7.) These losses, according to La Roca, are covered "property damage" as they constitute "loss of use of tangible property that is not physically injured[.]" La Roca further argues the losses were caused by an "occurrence" and thus, triggered both a duty to defend and a duty to indemnify.

It is undisputed that an insurer owes "a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. of Cal v. Superior Court,* 6 Cal. 4th 287, 295 (1993). Whether an insurer has a "duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." *Id.* at 300. If an insurer wrongfully fails to defend its insured, it is required to indemnify the insured for the resulting judgment, even though the duty to indemnify is narrower than the duty to defend. *Pruyn v. Agricultural Ins. Co.,* 36 Cal. App. 4th 500, 518 (1995).

La Roca argues the duty to defend was triggered under the Policy in light of the allegations leveled against it by PCCP in the underlying arbitration, the testimony presented at arbitration, and the arbitrator's findings. In essence, PCCP accused La Roca of breaching the lease by failing to timely prepare the property to meet fire and other code requirements so it could be used by PCCP as a school. While La Roca worked on the property to make it code-compliant, PCCP also made improvements to the property, including installing IT equipment, cable, phones, speakers, projectors, internal wiring, power outlets, doors, smartboards, and other school-specific items. An expert witness on behalf of PCCP testified that La Roca's work fell below the standard of care, causing it to miss inspection deadlines and fail to timely deliver a code-compliant property in accordance with the terms of the Lease. Based on these allegations and the evidence

presented at arbitration, the arbitrator found that "La Roca agreed to a date [to turn full possession of the property over to PCCP] with no understanding of whether it was reasonably achievable." (Compl. ¶ 27, Ex. D at 416.)  The arbitrator further found that, "What La Roca did not know was that having a school on the property significantly changed the scope of work and equipment needed to bring the property into compliance with the latest fire code." (*Id.*)  These facts, according to La Roca, give rise to a potential for coverage under the terms of the Policy.

La Roca asserts two theories in which the underlying action triggers coverage under the "loss of use of tangible property" provision: (1) the allegations and evidence in the arbitration show PCCP was unable to use the property as a school due to La Roca's conduct, and (2) the allegations and evidence in the arbitration show PCCP lost its own personal property left at, and improvements made to, the leasehold property due to La Roca's conduct.

As to the first theory, the Court of Appeal, Second District, in *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976 (2007), concluded loss of use of a leasehold interest, as here, would not constitute "loss of use of tangible property."  The court held that "strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property[.]"  *Id.* at 987.  The court, therefore, concluded that the insured's "leasehold interests were not tangible property."  *Id.*  In contrast, the Court of Appeal, Fourth District, in *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729, 742 (2018), questioned the reasoning of *Golden Eagle* and stated in dictum that "a lease is … a conveyance of an estate in real property. … Hence, a lessee in possession has a tangible property interest in the leased premises."  The parties here dispute whether La Roca was a "lessee in possession" of the property and dispute which Court of Appeal has the correct interpretation of the "loss of use of tangible property" provision.  This Court need not resolve the issue on the present motion, as La Roca's second theory provides, at a minimum, disputed facts that defeat Defendant's motion to dismiss.

La Roca's second theory is that the underlying action involves loss of use of PCCP's own personal property left at, and improvements to, the leased property, including IT and other school-related equipment and improvements, *e.g.,* wiring, plugs, doors, etc. So, while loss of use of the leased property might not be tangible property under *Golden Eagle*, the loss of PCCP's school equipment and improvements to the leasehold likely would be. *See Riverbank Holding Co., LLC v. New Hampshire Ins. Co.*, No. CIV. 2:11-2681 WBS GGH, 2012 WL 2119046 *8 (E.D. Cal. June 6, 2012) (finding, while loss of use of a leasehold might not be loss of tangible property, "loss of use of tenant improvement is[.]"). *See also Conway v. Northfield Ins. Co.*, 399 F.Supp.3d 950 (N.D. Cal. 2019) (similar). Both *Riverbank* and *Conway* involved leases for restaurant space and claims by the tenants against the landlord-insureds when the tenants' use and enjoyment of the space was disrupted. In both cases, the courts construed the tenants' claims to include losses for improvements to the property, as well as "damage to property owned by [the tenant] and located at the restaurant[,]" *Riverbank*, 2012 WL 2119046, at *6, and loss of use of the tenant's property that remained in the restaurant after it was forced to close. *Conway*, 399 F.Supp.3d at 961. And in both cases, the courts found those latter items of damage, specifically the damage to the tenant's property in *Riverbank* and the loss of use of the tenant's property in *Conway*, raised the potential for coverage under the policies. *Riverbank*, 2012 WL 2119046, at *6; *Conway*, 399 F.Supp.3d at 961. These findings apply equally here, where PCCP alleged loss of improvements to and loss of equipment left at the property, and lead to a denial of Defendant's motion based on the "property damage" provision in the Policy.[1]

---

[1] In its reply brief, Defendant argues any improvements PCCP made to the premises were not PCCP property according to the terms of the Lease. (Reply at 7.) However, Defendant admits that any improvements would become the property of La Roca only upon "expiration or termination of the Lease Agreement." (*Id.*) Before that time, any improvements would have been the property of PCCP, which was lost due to La Roca's alleged conduct.

Defendant's final argument rests on the term "occurrence," which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl., Ex. A, ECF No. 1-2 at 133.) The term "accident," in the context of liability insurance, "is more comprehensive than the term 'negligence' and thus includes negligence." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.,* 5 Cal. 5th 216, 221 ((2018). An "accident" exists "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." *Merced Mut. Ins. Co. v. Mendez,* 213 Cal. App. 3d 41, 50 (1989). Defendant asserts PCCP alleged only intentional conduct, which does not fit the definition of an "occurrence." Plaintiff disputes that PCCP's complaint was so limited.

Defendant is correct that PCCP's complaint alleged some intentional conduct on the part of LaRoca. (*See* Compl., Ex. B, ECF No. 1-2 at 327) (stating LaRoca's "failure to allow PCCP to remove even its personal property from the Premises was the result of a decision made by LaRoca at some point prior to expiration of the Lease"). However, that allegation, standing alone, does not mean PCCP's complaint was concerned only with intentional conduct. Elsewhere in the complaint, PCCP complained that LaRoca "worked at its own pace, disregarded multiple deadlines and requirements imposed by the city, and failed to act in a way that would bring it within even a long shot at providing the space to PCCP in the condition required by the Lease." (*Id.* at 325.) Based on these allegations and the evidence presented below, the arbitrator concluded that, "La Roca agreed to a date with no understanding of whether it was reasonably achievable" and "[w]hat La Roca did not know was that having a school on the property significantly changed the scope of work and equipment needed to bring the property into compliance with the latest fire code." (Compl., Ex. D, ECF No. 1-2 at 416.) The underlying record certainly raises the possibility that La Roca's actions were unintentional, negligent and fell below the standard of care in performing the work and meeting deadlines. A trier of fact could conclude that La Roca's "negligence was the starting point in a series of events leading to the loss of use" of PCCP's school equipment and improvements to the leasehold. *Conway,* 399 F.Supp.3d at 962.

Making an allowance for that possibility, the Court rejects Defendant's argument that there was no "occurrence" here, and thus no coverage.[2]

## III.

## CONCLUSION AND ORDER

For the reasons set out above, Defendant's motion to dismiss is denied.

**IT IS SO ORDERED**.

Dated: November 12, 2020

Hon. Dana M. Sabraw
United States District Judge

---

[2] In light of this decision, the Court also denies Defendant's motion to dismiss Plaintiff's bad faith claim.