UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ROCA CHRISTIAN COMMUNITIES INTERNATIONAL, INC., <br><br>  Plaintiff, <br><br> v. <br><br> CHURCH MUTUAL INSURANCE CO. <br><br>  Defendant. | Case No.: 20cv1324 DMS (BGS) <br><br> **ORDER (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND** |

This case comes before the Court on the parties' cross-motions for partial summary judgment on the duty to defend. The motions are fully briefed. For the reasons discussed below, the Court grants Plaintiff's motion and denies Defendant's motion.

**I.**

**BACKGROUND**

The present case arises out of a March 2018 commercial lease agreement ("Lease") between Plaintiff La Roca Christian Communities International, Inc. ("Plaintiff" or "La Roca") and Pacific Coast Christian Prep ("PCCP"). (Compl. ¶17.) La Roca is a nonprofit church and PCCP previously operated a primary school. (*Id.*) PCCP entered the Lease for the purpose of opening and operating a primary school on La Roca's premises. (*Id.*)

1

The Lease required a number of tenant improvements, some of which were paid for by Plaintiff and others by PCCP. (*Id.* ¶18.) Ultimately, not all of the improvements were completed prior to the start of the school year, and PCCP was unable to occupy the premises and use it as a school. (*Id.* ¶19.) As a result, PCCP was forced to move its school operation to an alternative site. (*Id.*)

In March 2019, PCCP filed a demand for arbitration against Plaintiff La Roca alleging claims for breach of contract and unjust enrichment. (*Id.* ¶¶20-21.) La Roca thereafter tendered PCCP's claim to Defendant Church Mutual Insurance Company for defense and indemnity coverage under a multi-peril insurance policy it had issued to Plaintiff, numbered 0263084-02-094345, effective March 21, 2018, to March 21, 2021 ("the Policy"). (*Id.* ¶¶6, 27.) Defendant denied Plaintiff's request for defense and indemnity coverage, but paid Plaintiff $20,000 (less a $250 deductible) under the Policy's Legal Defense Coverage. (*Id.* ¶29.) Plaintiff asked Defendant to reconsider its denial, but Defendant failed to respond to Plaintiff's request. (*Id.* ¶¶32-39.) The arbitrator then issued an Interim Award, awarding PCCP monetary damages against La Roca in the amount of $177,793.07. (*Id.* ¶40.) After the Interim Award was issued, Plaintiff forwarded it to Defendant and again requested that Defendant reconsider its denial of the claim. (*Id.* ¶¶41-43.) Ultimately, Defendant reaffirmed its denial. (*Id.* ¶¶44-47.) The arbitrator then issued a Final Award in favor of PCCP and against La Roca in the amount of $337,930.04, which included the interim award plus attorneys' fees, costs and prejudgment interest. (*Id.* ¶48.)

On July 14, 2020, Plaintiff La Roca filed the present case against Defendant arising from its denial of Plaintiff's request for coverage under the Policy. Plaintiff alleges claims for declaratory relief (duty to defend), declaratory relief (duty to indemnify), breach of contract, specific performance and bad faith.

///
///
///

## II.

## DISCUSSION

The parties both move for partial summary judgment on Defendant's duty to defend under the Policy, with Plaintiff also requesting summary judgment on the duty to indemnify.

**A.      Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

/ / /

/ / /

**B.     Duty to Defend**

"An insurer has a very broad duty to defend its insured under California law." *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). "The California Supreme Court has stated that 'the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy.'" *Id.* (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993)).  In California, "'[o]nce the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can *conclusively* refute that potential.'" *Id.* (quoting *Montrose*, 6 Cal. 4th at 299). "To protect an insured's right to call on the insurer's 'superior resources for the defense of third party claims … California courts have been consistently solicitous of insureds' expectations on this score.'" *Id.* (quoting *Montrose*, 6 Cal. 4th at 295-96). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* (quoting *Montrose*, 6 Cal. 4th at 299-300).

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id.* "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* (citing *Montrose*, 6 Cal. 4th at 295). Once the insured establishes that the damages sought in the suit against it are potentially covered under the policy, "the insurers must conclusively establish the absence of *any potential* for coverage in order to prevail on the duty-to-defend issue." *Id.* at 1055 (citing *Montrose*, 6 Cal. 4th at 300). To prevail on summary judgment, "the insurers must show that there is no genuine issue of material fact as to the potential for coverage." *Id.* (citing *Montrose*, 6 Cal. 4th at 300).

Here, PCCP's complaint against La Roca alleges that the Lease required La Roca to "bring the Premises into compliance with applicable City Building Codes and Ordinances"

by June 1, 2018.  (Ex. A. in Supp. of Pl.'s Mot. at 13.)  The Lease also required La Roca to build a code-compliant preschool playground for 80 students by June 15, 2018.  (*Id.*)  PCCP's complaint alleges La Roca failed to fulfill either of those contractual obligations.  (*Id.* at 13-14.)  Specifically, PCCP alleged "La Roca [ ] worked at its own pace, disregarded multiple deadlines and requirements imposed by the city, and failed to act in a way that would bring it within even a long shot at providing the space to PCCP in the condition required by the Lease."  (*Id.* at 16.)  As a result of these breaches, PCCP alleged it lost "a great deal of personal property" it had installed and placed on the premises.  (*Id.* at 15.)  PCCP also alleged La Roca refused to allow PCCP "to remove its property and improvements" from the premises.  (*Id.* at 16.)

Turning to the Policy, the relevant provisions provide:

> We [Defendant] will pay those sums that the insured [La Roca] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Compl., Ex. A, ECF No. 1-2 at 121.)  The Policy goes on to state: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'".  (*Id.*)  The Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 133.)  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

///

La Roca argues the facts alleged in PCCP's complaint, at a minimum, raised a potential for coverage under the Policy, therefore Defendant had a duty to defend La Roca in the underlying arbitration. Specifically, La Roca asserts PCCP's complaint alleged "property damage" in the form of "loss of use of tangible property that is not physically injured" as a result of an "occurrence," thereby triggering at least the potential for coverage.

There is no dispute that PCCP installed tangible property on the premises in anticipation of opening its school on the property. (Ex. A in Supp. of Pl.'s Mot. at 74) (spreadsheet listing "improvements and personal property brought to the Premises which PCCP has lost as a result of La Roca's breaches.") There is also no dispute that PCCP lost the use of that tangible property when La Roca breached the Lease.[1]

The only remaining element triggering a potential for coverage under the Policy is an "occurrence," and that element is the crux of the parties' dispute in this case. The Court addressed this issue in its order denying Defendant's motion to dismiss, there rejecting Defendant's argument that there was no "occurrence" under the Policy, and thus no coverage. On the present motions, Defendant again argues there was no "occurrence" under the Policy, and hence no coverage.

In support of this argument, Defendant again relies on La Roca's decision to refuse PCCP access to the premises so it could retrieve its property, which Defendant describes as intentional conduct rather than an "accident."[2] However, as stated above, the "occurrence" in this case was not La Roca's refusal to grant PCCP access to the premises so it could retrieve its property. Rather, the "occurrence" was La Roca's breach of the

---

[1] The parties dispute whether PCCP's loss of use of its tangible property occurred before and/or after termination of the Lease. (*See* Def.'s Mem. of P. & A. in Supp. of Opp'n to Pl.'s Mot. at 11; Pl.'s Reply at 8.) However, termination of the Lease was not the "occurrence" resulting in PCCP's loss of use of its property. Rather, the "occurrence" giving rise to that loss was La Roca's breach of the Lease.

[2] To reiterate, the Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl., Ex. A, ECF No. 1-2 at 133.)

Lease, which could have been construed as an "accident" based on the allegations in PCCP's complaint. (*See* Compl., Ex. B, ECF No. 1-2 at 325) (alleging LaRoca "worked at its own pace, disregarded multiple deadlines and requirements imposed by the city, and failed to act in a way that would bring it within even a long shot at providing the space to PCCP in the condition required by the Lease.")

Construing the "occurrence" as La Roca's breach of the Lease, Defendant argues that breach also was not an "accident," therefore it had no duty to defend under the Policy. In support of this argument, Defendant relies on the allegations set out above, specifically, PCCP's allegations that "La Roca [ ] worked at its own pace, disregarded multiple deadlines and requirements imposed by the city, and failed to act in a way that would bring it within even a long shot at providing the space to PCCP in the condition required by the Lease." (Ex. A. in Supp. of Pl.'s Mot. at 16.) According to Defendant, these allegations show La Roca did not "use its best efforts to comply with its contractual obligation," therefore "the resulting breach of contract [was] to be expected, it [was] not an accidental or fortuitous event." (Def.'s Mem. of P. & A. in Supp. of Opp'n to Pl.'s Mot. at 19-20.)

The Court is not persuaded by this argument for a couple of reasons. First, the allegations in PCCP's complaint are just that: Allegations. Although PCCP's complaint could be construed to allege intentional conduct on the part of La Roca resulting in a breach of the Lease, the allegations could also be construed as alleging negligent conduct, which could fall within the definition of an "accident." *See Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.,* 5 Cal. 5th 216, 221 (2018) (stating the term "accident," in the context of liability insurance, "is more comprehensive than the term 'negligence' and thus includes negligence.") Second, Defendant's interpretation of the allegations as alleging intentional conduct on the part of La Roca strains common sense. Why would La Roca have entered into the Lease with PCCP only to then intentionally breach its obligations and open itself up to liability? And why would either party have entered into the Lease if they expected the other party to breach? The suggestion that La Roca's conduct was intentional or that the breach was to be expected strains credulity and ignores "general contract law and the

long-standing rule 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995) (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573 (1973)) (quotation marks omitted).

Defendant also suggests that a breach of contract can never fall within the definition of an "occurrence," citing in support *Stein-Brief Group, Inc. v. Home Indem. Co.*, 65 Cal. App. 4th 364 (1998), *Mesa Underwriters Specialty Ins. Co. v. HYDS, Inc.*, No. CV 19-5792 PA (SKX), 2020 WL 2608148, at *1 (C.D. Cal. May 14, 2020), and *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976 (2007). In those cases, the courts found, based on the particular facts alleged, that a breach of contract was not an "occurrence" under the respective insurance policies. However, none of those cases established a bright-line rule that a breach of contract may never constitute an "occurrence" under an insurance policy. Indeed, the Ninth Circuit has specifically rejected that suggestion. *See Anthem*, 302 F.3d at 1056 (rejecting argument that breach of contract was not "occurrence" under policy). The suggestion that a breach of contract always falls outside the definition of an "occurrence" also runs afoul of the California Supreme Court's directive to "focus on the nature of the risk and the injury" rather than the "choice of remedy or the form of action sought" in determining whether there is coverage under an insurance policy. *Vandenburg v. Superior Court*, 21 Cal. 4th 815, 840-41 (1999). It is also inconsistent with third party liability policies like the one at issue here. As stated in *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal. 3d 395, 407 (1989),

> the right to coverage in the third-party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty. This liability analysis differs substantially from the coverage analysis in the property insurance context, which draws on the relationship between perils that are either covered or excluded in the contract. In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks.

In this case, Defendant has failed to show that PCCP's complaint "'can by no conceivable theory raise a single issue which could bring it within the policy coverage.'"

*Anthem*, 302 F.3d at 1056 (quoting *Montrose*, 6 Cal. 4th at 300). Defendant is therefore not entitled to summary judgment on the duty to defend. Plaintiff, however, has shown that PCCP's complaint "raises the possibility that the insured will be liable for losses covered by its policy." *Id.* (citations omitted). Accordingly, it is entitled to partial summary judgment on the duty to defend and the corresponding duty to indemnify. *See Pruyn v. Agricultural Ins. Co.,* 36 Cal. App. 4th 500, 518 (1995) (stating if an insurer wrongfully fails to defend its insured, it is required to indemnify the insured for the resulting judgment).

## III.

## CONCLUSION AND ORDER

For these reasons, Plaintiff's motion for partial summary judgment is granted and Defendant's motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: October 28, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court